IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BRYAN A. COLLINS . PLAINTIFF

V. Civil No. 3:14-cv-03064-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Bryan Collins, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his applications for DIB and SSI on March 30, 2011, alleging an amended onset date of May 1, 2010, due to mental health problems, severe depression, panic attacks, diabetes, left arm problems, and a right shoulder rotator cuff problem. Tr. 59, 209-221, 244, 276-277, 299. The Commissioner denied his applications initially and on reconsideration. Tr. 84-94,

100-104, 108-109.  The Administrative Law Judge ("ALJ") held an administrative hearing on September 17, 2012.  Tr. 56-83.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 50 years old and possessed the equivalent of a high school education.  Tr. 59, 245.  He had past relevant work ("PRW") experience as a tractor-trailer truck driver.  Tr. 80, 245- 246, 268-275.

On March 1, 2013, the ALJ concluded that Plaintiff's status post rotator cuff tear and acromion (AC) osteoarthritis of the right shoulder, status post intramedullary rodding of the left humerus, obesity, adjustment disorder with mixed anxiety and depressed mood, and/or major depressive disorder and agoraphobia with panic disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 40-43.  After partially discrediting the Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with no overhead reaching; simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; and, no more than incidental contact with co-workers, supervisors, and the general public.  Tr. 44-48.  With the assistance of a vocational expert, the ALJ then found Plaintiff capable of performing work as a bench assembler, bottle line attendant, inspector, tester, and sorter.  Tr. 49.

Subsequently, Plaintiff filed this action.  ECF No. 1.  This matter is before the undersigned by consent of the parties.  ECF No. 6. Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 10, 11.

**II.**   **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982) (en banc) (abrogated on other grounds); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion:

The Plaintiff raises the following issues on appeal: 1) whether substantial evidence supports the ALJ's RFC determination and 2) whether the ALJ erred in failing to find the Plaintiff's anxiety meets or medically equals the criteria of Listing 12.06. For clarity, we have reordered the Plaintiff's arguments.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### B.   Listing 12.06:

Plaintiff asserts that the ALJ erred by failing to find that his impairment met or medically equaled the requirements of listing 12.06. Listing 12.06 encompasses anxiety-related disorders. The required level of severity is met when the requirements of paragraphs A and B of Listing 12.06 are shown or when the requirements of paragraphs A and C of Listing 12.06 are shown. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. Paragraph A requires proof of generalized persistent anxiety accompanied by at least three symptoms. *Id*. § 12.06A. There is no question that the Plaintiff meets paragraph A, accordingly we will focus our attention on paragraphs B and C.

4

Paragraph B requires at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or, 4) repeated episodes of decompensation, each of an extended duration. *Id*. § 12.06B. Paragraph C of Listing 12.06 requires a showing of a "complete inability to function independently outside the area of one's home." *Id*. § 12.06C.

The ALJ concluded that the Plaintiff had only a mild restriction of activities of daily living, based on his reported activities. After reviewing the record, we agree. The Plaintiff reported collecting scrap metal and performing odd jobs with his son, babysitting his grandchild, talking on the phone regularly, playing cards/games, attending church weekly, grocery shopping monthly, and going out to eat or to a movie monthly.

The ALJ also found the Plaintiff's social difficulties to be moderate. Substantial evidence also supports this determination. Dr. Efird found that he communicated and interacted in a socially adequate manner. Moreover, based on the social activities discussed above, we agree that his limitations in this area are moderate at best.

As for his concentration, persistence, and pace, the ALJ assessed moderate difficulties. Although the Plaintiff did report some memory problems, the medical records do not support a finding of marked limitation in this area. To the contrary, Dr. Sherman repeatedly found his attention and concentration to be within normal limits; his thought processes logical, sequential, coherent, and goal oriented; and, his memory intact for short, intermediate and long-term information. Dr. Zurkowski noted similar findings. The Plaintiff also reported the ability to watch television and/or listen to the radio for approximately 8 hours per day with no reports of an inability to follow or focus on the material presented. Accordingly, we find that the Plaintiff's restrictions in this area were no more than moderate.

5

As for extended episodes of decompensation, we can find no evidence of these. The Plaintiff denied a history of hospitalization for either of his mental impairments. Although the record does reveal a waxing and waning of his symptoms, there is no evidence to suggest that his impairments were severe enough to qualify as extended episodes of decompensation.

Likewise, we can find no evidence to suggest that the Plaintiff was unable to function independently outside his home. Instead, the record shows that he has been able to care for himself and collect scrap metal and perform other odd jobs with his son. Tr. 354-355, 362-365. Further, he told Dr. Sherman that he loved his granddaughter and planned to babysit her often. Tr. 354-355. The Plaintiff also shopped for groceries, attended medical appointments, attended church, went out to dinner and/or movies, and visited friends and/or relatives. Tr. 331-352.

Accordingly, we do not find that the Plaintiff's anxiety impairment meets the requirements of Listing 12.06. For the same reasons enumerated above, we find that substantial evidence supports that ALJ determination that the Plaintiff's impairment does not medically equal the listing.

**B.     RFC Determination:**

The Plaintiff raises two issues concerning the ALJ's RFC determination. First, he contests the ALJ's RFC, stating that it does not properly account for the limitations associated with his depression and anxiety disorder. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir.

6

2009). An ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Because the Plaintiff only contests the mental limitations included in the RFC assessment, we will not discuss the ALJ's physical RFC findings. With respect to the Plaintiff's mental impairments, the ALJ concluded that he could perform repetitive tasks involving only simple work-related decisions with few, if any, workplace changes and no more than incidental contact with co-workers, supervisors, and the general public. In so doing, he recounted the Plaintiff's history of outpatient counseling and medication management for major depressive disorder and agoraphobia with panic disorder. The Plaintiff was under the care of Dr. Susan Sherman and Karen Lombardo, Licensed Social Worker, at the Institute for Personal Development ("IPD") in Illinois from 2009 through March 2011. Tr. 353-385. After moving to Arkansas, he established with Dr. Thomas Zurkowski and Carmen Foster, Licensed Social Worker, at DaySpring Behavioral Health Services ("DSBHS") from April 2011 until at least May 2012. Tr. 548-563, 676-678. Interestingly, however, the records reveal that the Plaintiff's depression, panic attacks, and anxiety stemmed from his physical impairment, inability to perform his PRW, marital problems and ultimate divorce, and financial problems. Tr. 356, 361, 366, 368-376, 378, 556. *See Gates v. Astrue*, 627 F.3d 1033, 1039-1040 (8th Cir. 2001) (record supported ALJ's finding that the claimant's depression did not result in significant functional limitations where intake notes indicate that depression was due to denial of food stamps and workers compensation and was situational in nature). Treatment notes also indicate that the Plaintiff's condition was responsive to medication, with no reported side effects. Tr. 364, 365, *Gray v. Massanari*, 2007 WL 409514, at *1 (8th Cir. 2001) (holding depression not disabling where it was situational and relieved by medication).

7

In February 2010, Dr. Sherman noted that the Plaintiff's anxiety and depression were stable, despite his chronic pain. Tr. 382. Following a medication change from Paxil to Effexor, the Plaintiff reported improvement and continued mood stability in April. Tr. 380. Dr. Sherman also noted stabilization of his panic disorder in July 2010. Tr. 377. In September, the Plaintiff indicated that he experienced only occasional panic attacks, despite his failing marriage. Tr. 364-365. Improvement continued in October, with Dr. Sherman's notation that he was "joking and kidding with his usual sense of humor." Tr. 362-363. The Plaintiff had experienced only one panic attack and no depressive symptoms since his last visit. This positive momentum persisted and he reported continued improvement in November. Tr. 359-360.

The Plaintiff's anxiety appears to have flared up again, however, following the re-injury of his arm in November. Tr. 357-358. He then relocated to Arkansas in April 2011 and experienced a great deal of stress over his living arrangements, lack of financial resources, and his contention that doctors advised him he had experienced a heart attack sometime in the past. Tr. 548-552, 678. It appears that he had adjusted to his new home by June 2011, at which time he advised consultative examiner, Dr. Terry Efird, that his medications were "noticeably beneficial." Tr. 490-494. Further, in February 2012, although he reported being "basically homeless," the Plaintiff asked Dr. Zurkowski to decrease his Xanax dosage. Tr. 677. The Plaintiff also consistently reported no medication side effects. Tr. 548, 549, 676-678.

Although we are cognizant of the global assessment of functioning ("GAF") scores[1]

---

[1] We recognize that the DSM–V was released in 2013, replacing the DSM–IV. The DSM–V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Alcott v. Colvin*, No. 4:13–CV–01074–NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki,* 2013 WL 3153981, at *1 n. 2 (Vet.App.2013) (quoting the DSM–V)). However, because the DSM–IV was in use at the time the medical assessments were conducted in this case, the Global Assessment of Functioning scores remain relevant for consideration in this appeal. *Rayford*, 2013 WL 3153981, at *1 n. 2.

assessed by the Plaintiff's treatment team, ranging from 41 to 59, we note that the ALJ is not required to give GAF scores controlling weight. GAF scores have no direct correlation to the severity standard used by the Commissioner. *See* 65 Fed. Reg. 50746, 50764–65 ("[GAF scores] do[] not have a direct correlation to the severity requirements in our mental disorders listings."); *see also Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (holding GAF is not directly related to RFC). While this information is useful in planning treatment, measuring its impact, and predicting its outcome, a GAF score provides little insight into the Plaintiff's longitudinal ability to perform work-related activities. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 32 (4th ed. 2000). This is especially true in cases, such as this one, where the mental health providers assessed the GAF scores on a few occasions and the scores are inconsistent with the evidence. Thus, while we do note the GAF scores, we do not find them to be indicative of his level of day-to-day functioning or supported by the overall weight of the evidence.

Dr. Efird's consultative examination also provides support for the ALJ's RFC determination. Tr. 490-494. He concluded that the Plaintiff maintained the ability to communicate and interact in a socially adequate manner, perform the basic cognitive tasks required for basic work-like activities, track and respond adequately, maintain attention and concentration during the exam, and complete most tasks assigned during the exam. Further, two non-examining consultative examiners completed RFC assessments finding the Plaintiff capable of performing repetitive tasks involving only simple work-related decisions with few, if any, workplace changes and no more than incidental contact with co-workers, supervisors, and the general public.

The record also reveals that the Plaintiff performed activities that were inconsistent with his allegations of disabling depression and anxiety. On a form he completed for his attorney, the Plaintiff indicated that he grooms himself, plays cards/games, and exercises daily; washes dishes,

9

does laundry, makes his bed, attends church, and talks to his neighbors weekly; and, grocery shops, visits friends and relatives, and goes out to eat or to a movie on a monthly basis. Tr. 331-352. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). He also indicated that he plans to babysit his granddaughter as often as his daughter will allow.

Second, Plaintiff contests the weight the ALJ gave to the statements of his treating counselors. Under the social security regulations, the Commissioner will generally give a treating physician's opinion on the issue of the nature and severity of a Plaintiff's impairments "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2)3; *see also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Yet such weight is neither inherent nor automatic and does not "obviate the need to evaluate the record as whole." *Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006); *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir. 2001). The Commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (quoting *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010)); *accord Hacker,* 459 F.3d at 937 (declining to give

controlling weight to treating physician's opinion because treatment notes were inconsistent with her assessment).

The government correctly points out that these counselors are "other medical sources." According to the social security regulations, only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, provide medical opinions, and be considered treating sources. 20 C.F.R. §§ 404.1527(a)(2), (d) and 416.927(a)(2), (d) (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). Other sources, including counselors, however, may provide insight into the severity of the impairment and how it affects the individual's ability to function. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also* SSR 06–3p. Accordingly, both counselors are qualified to opine regarding the severity of the Plaintiff's impairments.

However, like acceptable sources, the ALJ can reject medical opinions from other sources if they are inconsistent with or lack support in the record. *See Perkins* v. *Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions). As previously discussed, the Plaintiff's medical records reveal that his depression and anxiety were situational in nature and his condition amenable to treatment.

Moreover, Ms. Foster completed her assessment after evaluating the Plaintiff on only one occasion. Tr. 553-563. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). While it is true that he submitted for monthly medical

11

management appointments with Dr. Zurkowski, there are no further records to suggest that Ms. Foster played an active role in the Plaintiff's treatment. For this reason, we agree that her assessment was not entitled to significant weight.

Ms. Lombardo did have the benefit of treating the Plaintiff from 2008 until 2011; however, she had not treated him for approximately 18 months prior to the date of her assessment. Ms. Lombardo's opinion is also somewhat conclusory, as she states he is unable to work due to agoraphobia and panic attacks, but provides no support for her conclusion. Instead, her records establish that the Plaintiff's impairments were situational in nature and amenable to treatment.

We can find no evidence to indicate that the Plaintiff suffered from a level of anxiety and/or depression that would prevent him from performing all work-related tasks. To the contrary, the record reveals he continued to perform scrap metal work as available and other odd jobs with his son; made plans to attend Mardi Gras; attended church weekly; played cards/games and exercised daily; and, talked to neighbors, shopped for groceries, visited relatives and friends, and went out to eat or to a movie monthly. Tr. 331-352. As such, we do not find that the overall record supports the statements of Ms. Lombardo and Ms. Foster.

**IV.  Conclusion**:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 26th day of January, 2016.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE